## Ida F. Parsons v. The People, etc.

1. Courts—*Exercise of Discretion—Subject to Review on Appeal.*— In this State it is established that the exercise of discretion by the courts of original jurisdiction is subject to review on appeal.

2. Contempt of Court—*Who are Liable.*—Where a corporation and its board of directors are enjoined from doing certain specified acts, a person not a director, but having knowledge of the injunction, is equally guilty of contempt for violating it.

3. Contempt—*Disobeying Injunctions—Proceedings Against Persons Not in Terms Enjoined.*—The rule upon a person not in terms enjoined should not be to show cause why he should not be attached and committed to jail for contempt of court in disobeying the injunction, but should be in knowingly and willfully aiding and abetting in disobeying and violating the injunction.

4. Injunctions—*Disobedience upon the Advice of Counsel.*—Courts should hesitate before punishing as contempt an act advised by competent and reputable counsel.

Memorandum.—Contempt of court. Appeal from the Superior Court of Cook County; the Hon. Philip Stein, Judge, presiding. Heard in this court at the October term, 1893, and reversed. Opinion filed February 1, 1894.

The statement of facts is contained in the opinion of the court.

Pence & Carpenter, solicitors for appellant.

Mr. Justice Gary delivered the opinion of the Court.

In this State it is established that even the exercise of discretion by the courts of original jurisdiction is subject to

review on appeal. Boyle v. Levi, 73 Ill. 175; Thielman v. Burg, 73 Ill. 293, and Misch v. McAlpine, 78 Ill. 507, are but a few of the many cases recognizing that principle.

On the first day of March, 1893, the Superior Court, under the title of the People of the State of Illinois v. Ida F. Parsons and Walter B. McBride, made *inter alia* this order: " and that said Ida F. Parsons do stand committed to said common jail of said Cook county, for a period of twenty days for her said contempt."

From that order she appeals. Nobody else seems to care anything about the matter, as there is no appearance against her in this court. She was the treasurer of the " Woman's Columbian Laundry Company," one, probably, of the numberless enterprises in connection with the recent great exposition in Chicago, the promoters of which enterprises looked for " the potentiality of acquiring wealth beyond the dreams of Crœsus." In a litigation which very soon sprang up among the women, the Superior Court on the 16th day of January, 1893, entered an injunction order, a part thereof being as follows :

" And it is also ordered by the court that the said Woman's Columbian Laundry Company and its board of directors be and they are, hereby ordered to desist and refrain from incur, ring any expenses or obligations in and about the erection of any building or buildings, and to desist and refrain from paying any money to said Walter B. McBride on account of his alleged contract with said company, which he claims to have had assigned to him by one H. C. Flood, and to desist and refrain from entering into any similar contract with said Walter B. McBride."

That Ida was not one of the board, and therefore not in terms enjoined, does not excuse her disobedience of any injunction, the existence of which she knew. Lord Wellesley v. Earl of Mornington, 11 Beavan, 181. But then the rule upon her should not have been, as it is, to show cause why she " should not be attached and committed to jail for contempt of court in disobeying the injunction entered in this cause," etc., but it should have been, as it was as to other parties

included in the rule, " in knowingly and willfully aiding and abetting   *   *   *   in disobeying and violating said injunction." Lord Wellesley v. Earl of Mornington, 11 Beavan, 180. Those two cases were for the same act, and the distinction here made was the very ground of decision. And this case shows a good reason for the distinction.

Mrs. Sallie M. Moses was president of the board, and was present, presiding when the resolution was unanimously passed directing the act for which Ida was punished. Mrs. Moses, as well as several directors, were included in the rule to show cause — showed cause — and were discharged. Had Ida been charged with aiding and abetting, then she could not consistently have been punished for the mistake of Mrs. Moses and her co-officials, unless they were also punished. No earldom would have been their shield. But there is a higher ground for reversing.

The appellant is sentenced to punishment — not to make restitution for some wrong done — nobody (unless the keeper of the jail) could be benefited by her imprisonment. The contempt — if committed — is a misdemeanor. Beatie v. People, 33 Ill. App. 651.

There are many acts which are crimes or not, as the intention of the doer may be. A clerk, taking the money of his principal against his known will, but in the *bona fide* belief of a right to take it, is not guilty of crime. Ross v. Innis, 35 Ill. 487. And it is a defense in an action for malicious prosecution that the defendant acted under the advice of a reputable attorney, to whom all material facts were known. Ross v. Innis, 26 Ill. 259; Brown v. Smith, 83 Ill. 291.

Now, it appears that at the meeting of the board at which the before mentioned resolution was passed, the Hon. James McCartney, acting as he swears, " in the honest belief that he was advising for the best interest of the company," advised the doing of the act which is charged to be a violation of the injunction, and that in his judgment it would not be a violation.

Mr. McCartney was lately attorney-general of this State; the duty by statute imposed upon him, to advise upon re-

quest, all state officers, from the governor down, as well as the legislature, upon legal or constitutional questions. Why should not this bevy of women trust to and rely upon his advice? More especially, why should this young woman—I write young, because her mother was an active director—why should this young woman—present at the meeting, hearing and believing the advice—be punished for acting on that belief, in obedience to the order of the older women—among them her own mother—who were her employers and superiors? I remember to have heard the Hon. George Manniere say, more than thirty years ago, in the Circuit Court of this county, of which he was then sole judge, that he should hesitate long before punishing as contempt, an act advised by Archibald Williams and O. H. Browning, distinguished lawyers of Quincy, in this State.

There is nothing in the case to cast doubt upon her good faith. In the absence of all evidence, the presumption should not be indulged that she knew better, and therefore that upon her should be laid the transgressions of the others, as upon a scapegoat into the wilderness.

The appellant should have been discharged, and the judgment is reversed.

MR. JUSTICE WATERMAN dissents.